KATHERINE T. LANGE, Plaintiff v. DAVID R. LANGE, Defendant

No. COA02-567-2

(Filed 21 December 2004)

**Judges— recusal—vacation house jointly owned with attorney**

The recusal of a judge was remanded where defendant either did not assign error or did not argue assignments of error about findings; the evidence supported findings that contacts between the judge and defendant's counsel about jointly owned vacation property were not so frequent as to violate the Code of Judicial Conduct; and the findings supported the conclusion of no bias.

Judge CALABRIA dissenting.

Appeal by defendant from order entered 4 October 2001 by Judge William A. Christian in Mecklenburg County District Court. Heard in the Court of Appeals 12 February 2003. A divided panel of this Court dismissed as moot. *See Lange v. Lange,* 157 N.C. App. 310, 578 S.E.2d 677 (2003). The North Carolina Supreme Court vacated and, by opinion entered 5 December 2003, remanded to this Court for consideration of the appeal on its merits. *See Lange v. Lange,* 357 N.C. 645, 588 S.E.2d 877 (2003).

*Casstevens, Hanner, Genter & Riopel, P.A., by Dorian H. Gunter and Reid, Lewis, Deese, Nace & Person, L.L.P., by Renny W. Deese, for plaintiff-appellee.*

*James, McElroy & Diehl, P.A., by William K. Diehl, Jr., Katherine S. Holliday, Richard S. Wright, and Preston O. Odom, III, for defendant-appellant.*

STEELMAN, Judge.

Our Supreme Court remanded this case to the Court of Appeals for consideration of the appeal on its merits. Accordingly, we review defendant's appeal to determine whether Judge Christian erred in granting plaintiff's motion to recuse Judge Jones. We reverse and remand this matter to the trial court for further proceedings under Rule 63 of the Rules of Civil Procedure.

A more detailed recitation of the facts can be found in our first opinion, *Lange v. Lange*, 157 N.C. App. 310, 578 S.E.2d 677 (2003), and the Supreme Court's opinion, *Lange v. Lange*, 357 N.C. 645, 588 S.E.2d 877 (2003). We review only those facts pertinent to this opinion.

Plaintiff, Katherine T. Lange, and defendant, David R. Lange, were married in 1989. Following their divorce in 1998, the court entered an order approving a parenting agreement that provided for the parties' two minor children to live in Mecklenburg County pursuant to a shared custody arrangement. In March 2000, plaintiff filed a motion to modify custody because she was engaged and wished to move her family to Southern Pines. Defendant responded to the motion asking the court to grant him primary physical custody of the children if his ex-wife moved from Mecklenburg County. A hearing on the parties' motion to modify custody was held before Judge William G. Jones in the District Court of Mecklenburg County during the week of 13 June 2000. By letter dated 30 June 2000, Judge Jones announced his decision in the matter, requiring the children to continue to reside in Mecklenburg County, and directing counsel for the defendant to submit a proposed order. Over the next several months, the parties discussed the precise language and provisions of the order. In November 2000, prior to Judge Jones signing the order, plaintiff's counsel moved for Judge Jones to recuse himself because Judge Jones and Katherine S. Holliday, counsel for the defendant, were among a group of people who jointly owned a vacation property located in the mountains.

Judge William Christian was assigned to hear plaintiff's recusal motion. On 14 October 2001, Judge Christian entered an order which concluded that Judge Jones had not violated any specific provisions of Cannons 2, 3, or 5 of the North Carolina Code of Judicial Conduct, and that there was no evidence of actual bias or partiality on the part of Judge Jones and his conduct in the case. However, Judge Christian concluded that it was not necessary for there to be a showing of actual bias or a violation of a specific provision of the Code of

LANGE v. LANGE

[167 N.C. App. 426 (2004)]

Judicial Conduct for a judge to be required to be recused from a case. Holding the mere appearance of bias or prejudice was sufficient to require recusal, Judge Christian ordered that Judge Jones be recused from the case, and ordered a new trial in the matter. Defendant appealed. Plaintiff cross-appealed, asserting that Judge Christian erred in not finding that Judge Jones had violated specific provisions of the Code of Judicial Conduct.

## I. Standard for Disqualification

Our Supreme Court directed that upon remand, our first inquiry shall be whether Judge Christian's findings of fact that Judge Jones did not violate the Code of Judicial Conduct are supported by the evidence. *Lange v. Lange*, 357 N.C. 645, 649, 588 S.E.2d 877, 880 (2003). The proper standard by which we review the trial court's findings of fact is limited to a determination of (1) whether those " 'findings are supported by competent evidence, in which event they are conclusively binding on appeal[;]' " and (2) " 'whether those factual findings in turn support the judge's ultimate conclusions of law.' " *State v. Hughes*, 353 N.C. 200, 207, 539 S.E.2d 625, 631 (2000) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)).

## II. Analysis

Judge Christian made the following findings of fact, which are germane to this determination:

IV: That since approximately 1986, the Honorable William G. Jones and Katherine S. Holliday, together with other persons, have been co-owners of a vacation property in Yancy County, North Carolina near Mount Mitchell; and that Katherine S. Holliday currently owns a 1/6th undivided interest and the Honorable William G. Jones and wife own a 1/2 undivided interest in the property.

V. That in 1987 the Honorable William G. Jones gave public notice of the co-ownership in the vacation property by posting a notification in the courthouse and circulating a memorandum about the joint ownership to members of the bar regularly practicing in the local juvenile and domestic courts; that Judge Jones was also in the habit of disclosing the joint ownership to litigant in his Court; that this joint ownership was common knowledge in the domestic bar of Mecklenburg County; that at some later point, the disclosure ceased; that at the time of the hearing of this matter, the information had become stale and some members of the

bar, including Mr. Gunter, did not know of the co-ownership; and that Plaintiff did not know of the co-ownership.

VI. That at the hearing of this matter in June, 2000, no disclosure of the co-ownership was made by the Honorable William G. Jones, or Katherine S. Holliday, as Judge Jones erroneously assumed that Plaintiff's attorney knew of the joint ownership.

VII. That the owners of the vacation property, including the Honorable William G. Jones, and Katherine S. Holliday, occupy, maintain, and finance the property pursuant to an informal agreement based on mutual trust, communication, and friendship; that the property was designed, constructed, furnished, and financed by joint efforts and cooperation among the co-owners; and that the co-owners meet annually to provide for their occupancy of the property, make joint decisions on the maintenance and preservation of the property, and provide twelve (12) checks which are held by the Honorable William G. Jones, and deposited into an account he and his wife solely own, and from which he pays the mortgage debt service, and expenses of the property with no obligation to make an accounting to anyone.

VIII. That the Honorable William G. Jones did not violate any specifically enumerated canon of ethics set forth in the North Carolina Code of Judicial Conduct in terms of his relationship with Katherine S. Holliday, or any other party or counsel in this case; that the financial dealings between the Honorable William G. Jones, and other co-owners of the vacation property, including Katherine S. Holliday were not so "frequent" as to violate Canon 5 of the North Carolina Code of Judicial Conduct; and that the annual meeting in which the monthly checks are provided en masse for monthly deposit do not cause the frequent contact which the canon contemplates; and that similarly, the annual meetings that were held to divide the use of the property between the co-owners is so infrequent and perfunctory as to not constitute the frequent contact that the canon of judicial conduct contemplate[s].

IX. That the Plaintiff concedes and the Court finds that no evidence was presented that tended to show that at any time during the hearing of this matter, the Honorable William G. Jones displayed any actual bias, or partiality against Plaintiff by any ruling, decision or result in the case on account of his relationship with Katherine S. Holliday; that their prior public notification of their

co-ownership of the vacation property indicates no subterfuge or bad faith on the part of either Katherine S. Holliday or the Honorable William G. Jones in failing to make the disclosure of their co-ownership of the vacation property.

XII. That the Honorable William G. Jones does have a fiduciary responsibility to the owner's of the property, including, Katherine S. Holliday; that there is a continuing financial connection between the Honorable William G. Jones, and Katherine S. Holliday in relation to the vacation property especially as it relates to debt service, tax payments, and maintenance fees; and that a reasonable person would question the impartiality of the Honorable G. Jones based upon the facts found herein, although no actual bias nor specifically enumerated violation of the Canons of Judicial Conduct has been shown.

Defendant does not specifically assign as error any of the above findings of fact, but does assign as error that the trial court failed to make findings of fact based upon evidence presented at the hearing by defendant. Defendant does not argue these assignments of error (numbered 13 and 15 in the record on appeal) in his brief. As a result they are deemed abandoned. N.C. R. App. P. 28(b)(6). As findings of fact IV, V, VI, VII, and XII are unchallenged on appeal, they are presumed correct and binding on this Court. *See In re Beasley*, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). Furthermore, we hold that there is sufficient evidence in the record to support each of these findings.

Plaintiff cross-assigned as error finding of fact VIII in the record on appeal, and does bring forward, in her brief, this cross-assignment of error.

Plaintiff contends Judge Christian improperly failed to find a violation of North Carolina Code of Judicial Conduct Canon 5(C)(1), which provides "[a] judge should refrain from financial and business dealings that . . . involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves." Code of Judicial Conduct, Canon 5(C)(1) (2004). Judge Christian found as fact that the contact between Judge Jones and Holliday was "not so 'frequent' as to violate Canon 5 of the North Carolina Code of Judicial Conduct[.]" Judge Christian further found that the annual meetings at which the owners divided use of the property and provided checks to Judge Jones *en masse* for monthly deposit were "so infrequent and perfunctory as to not constitute the frequent contact that the canon

**LANGE v. LANGE**

[167 N.C. App. 426 (2004)]

of judicial conduct contemplate[s]." There is substantial evidence to support this finding of fact.

The above recited findings of fact, in turn support Judge Christian's conclusion of law:

II. That no specifically enumerated violation of Canons 2, 3, or 5 of the North Carolina Code of Judicial Conduct has been shown; and that no evidence of actual bias or partiality exists on the part of William G. Jones, and his conduct in [t]his case.

Having found that the findings of fact are supported by competent evidence, and that those findings in turn support the conclusions of law, we are mandated by the Supreme Court to find that "Judge Christian erred by ordering Judge Jones' recusal." *Lange*, 357 N.C. at 649, 588 S.E.2d at 880.

In light of this holding, we remand this matter to the trial court for further proceedings in accordance with Rule 63. *Id.* at 648, 588 S.E.2d at 879. The judge assigned to conduct these proceedings shall have the discretion either to enter Judge Jones' order or to hold a new custody modification hearing. *Id.*

### III. Dissent

Our Supreme Court's ruling in this matter clearly and concisely set forth the standard of review this Court was to apply upon remand. It has long been established that " '[o]n the remand of a case after appeal, the mandate of the reviewing court is binding on the lower court, and must be strictly followed, without variation and departure.' " *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 667, 554 S.E.2d 356, 363 (2001) (quoting *Collins v. Simms*, 257 N.C. 1, 11, 125 S.E.2d 298, 306 (1962) (Parker, J., concurring in the result)). We, therefore, do not reach the issues set forth in the dissent.

REVERSED AND REMANDED.

Judge McCULLOUGH concurs.

Judge CALABRIA dissents.

CALABRIA, Judge, dissenting.

Because I cannot reconcile the majority's reading of our Supreme Court's opinion with the existing standard our Supreme Court asked

this Court to apply, I respectfully dissent. The Supreme Court, citing *State v. Scott* and *State v. Fie*, expressly stated "the Court of Appeals should apply the standard as it has been previously set out by this Court." *Lange v. Lange*, 357 N.C. 645, 649, 588 S.E.2d 877, 880 (2003). Nothing in the Supreme Court's opinion remanding this case to this Court indicates that any portion of *Scott* or *Fie* has been overruled or improperly sets forth the standard, and both cases expressly support the proposition that the appearance of impropriety justifies recusal. Moreover, I am concerned with the clarity of the record in the instant case and how the standard applies to that record. Accordingly, I will set out my understanding of the standard for recusal previously set forth by our Supreme Court and analyze whether Judge Christian's order can be reconciled with that standard.

I. Standard for Disqualification

Our Code of Judicial Conduct states that "a judge should disqualify himself in a proceeding in which his impartiality may reasonably be questioned[.]" Code of Judicial Conduct, Canon 3(C)(1) (2004).[1] Canon 3(C)(1) then non-exhaustively enumerates the following instances warranting recusal:

(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings;

(b) He served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(c) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(d) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

---

1. This language was preserved despite the fact that the "appearance of impropriety" language in the title of Canon 2 was deleted from the Code in 2003. Code of Judicial Conduct, Canon 2 (2004).

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

Our Courts have repeatedly held, in accordance with the Code, "that a party has a right to be tried before a judge whose impartiality cannot reasonably be questioned." *State v. Fie,* 320 N.C. 626, 627, 359 S.E.2d 774, 775 (1987) (citing Code of Judicial Conduct, Canon 3(C)(1) (1973)). *Accord State v. Scott,* 343 N.C. 313, 326, 471 S.E.2d 605, 613 (1996); *State v. Vick,* 341 N.C. 569, 576, 461 S.E.2d 655, 659 (1995) (both cases concluding there was no error in a judge's failure to recuse himself in a criminal proceeding where the defendant did not present "substantial evidence of partiality or evidence that there was an appearance of partiality"). Indeed, as our Supreme Court has instructed:

It is not enough for a judge to be just in his judgment; he should strive to make the parties and the community feel that he is just; he owes this to himself, to the law and to the position he holds. . . . The purity and integrity of the judicial process ought to be protected against any taint of suspicion to the end that the public and litigants may have the highest confidence in the integrity and fairness of the courts.

*Fie,* 320 N.C. at 628, 359 S.E.2d at 775-76 (citations and internal quotation marks omitted).

Thus, our Courts have not traditionally limited orders of recusal to instances where actual partiality is shown but " 'go further, and say that it is also important that every man should know that he has had a fair and impartial trial; or, at least, that he should have no just ground for suspicion that he has not had such a trial.' " *Bank v. Gillespie,* 291 N.C. 303, 311, 230 S.E.2d 375, 380 (1976) (quoting *Ponder v. Davis,* 233 N.C. 699, 706, 65 S.E.2d 356, 361 (1951)). The standard as it has been previously set out by our Supreme Court calls for a determination as to whether there is substantial evidence of either partiality or an appearance of partiality. *Scott,* 343 N.C. at 326, 471 S.E.2d at 613; *Vick,* 341 N.C. at 576, 461 S.E.2d at 659. We note that, in answering this question, it is well established that the burden of proof rests squarely upon the party moving for disqualification of the judge " 'to demonstrate objectively that grounds for dis-

qualification actually exist.' "[2] *Fie*, 320 N.C. at 627, 359 S.E.2d at 775 (quoting *State v. Fie*, 80 N.C. App. 577, 584, 343 S.E.2d 248, 254 (1986) (Martin, J., concurring)). *Accord Scott*, 343 N.C. at 325, 471 S.E.2d at 612; *State v. Honaker*, 111 N.C. App. 216, 219, 431 S.E.2d 869, 871 (1993) ("a party moving for recusal must produce substantial evidence that the judge's impartiality may reasonably be questioned"); *State v. Kennedy*, 110 N.C. App. 302, 305, 429 S.E.2d 449, 451 (1993) ("[t]he moving party may carry this burden with a showing ' "of substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially," ' . . . or a showing that the circumstances are such that a reasonable person would question whether the judge could rule impartially") (citations omitted).

II. Judge Christian's Order

In remanding this case to our Court, our Supreme Court twice stated recusal was proper when "grounds for disqualification actually exist." *Lange*, 357 N.C. at 649, 588 S.E.2d at 880.[3] Moreover, our

2. The requirement upon the party moving for disqualification " 'to demonstrate objectively that grounds for disqualification actually exist' " has been repeated throughout our case law. However, I do not understand this statement as requiring a showing of actual bias. Indeed, our Supreme Court made clear in *Fie* that while they agreed with this statement from Judge Martin's concurring opinion, the Court "also agree[d] with Judge Wells [as expressed in his dissenting opinion] that a party has a right to be tried before a judge whose impartiality cannot reasonably be questioned." *Fie*, 320 N.C. at 627, 359 S.E.2d at 775. The Court concluded, "[t]he appearance [of bias] . . . is sufficient to require a new trial." *Id.*, 320 N.C. at 628-29, 359 S.E.2d at 776. Accordingly, while the burden rests upon the moving party to demonstrate the grounds for disqualification, such grounds include either actual partiality or the appearance of partiality.

3. Our Supreme Court, citing *Scott* and *Fie*, further stated that the party moving for disqualification can show these grounds with "substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially." *Lange*, 357 N.C. at 649, 588 S.E.2d at 880 (citation omitted). In both *Scott* and *Fie*, our Supreme Court set out the standards contained in Canon 3(C)(1) and N.C. Gen. Stat. § 15A-1223 (2003) (*requiring* recusal in criminal proceedings where a judge is actually "[p]rejudiced against the moving party or in favor of the adverse party"). *Fie* illustrates that the actual bias requirement codified in N.C. Gen. Stat. § 15A-1223 is a higher standard than that found in Canon 3(C)(1). It may very well be that our Supreme Court has indicated this higher standard of actual bias is appropriate in civil cases where, as here (1) the trial is concluded, (2) the trial court has orally given its ruling but has not yet reduced that ruling to writing, and (3) the party moving for recusal, which is also the non-prevailing party, could not reasonably have known the circumstances warranting recusal. Application of this higher standard might be preferred to prevent collateral attacks by the non-prevailing party on a ruling by impugning the impartiality of the judge rather than challenging the legal merits of the ruling. Nonetheless, Judge Christian's uncontested finding that neither plaintiff nor her

Supreme Court indicated that any such ground must be supported by findings of fact and such findings of fact must be supported by evidence in the record. *Id.*

A.  Grounds for Disqualification

Regarding Judge Christian's order, our Supreme Court noted in passing:

> Judge Christian made specific findings of fact and conclusions of law that Judge Jones did not violate the Code of Judicial Conduct by his actions in this case and that there was no evidence of any bias by Judge Jones. Nevertheless, Judge Christian then went on to conclude that Judge Jones should be recused because a reasonable person could question his ability to rule impartially. Judge Christian's ruling was based on inferred perception and not the facts as they were found to exist.

*Lange*, 357 N.C. at 649, 588 S.E.2d at 880. *But see Stephenson v. Bartlett*, 358 N.C. 219, 229-30, 595 S.E.2d 112, 119-20 (2004) (upholding the requirement of N.C. Gen. Stat. § 1-267.1 that a former member of the General Assembly may not sit as a member of the three-judge panel in a re-districting case on the grounds that it was "sensible insurance against any appearance of conflict of interest" and noting that such a framework "reduces the appearance of improprieties"). Nonetheless, Judge Christian did find that "a reasonable person *would question* the impartiality" of Judge Jones and concluded, pursuant to the language of Canon 3(C)(1) that "a judge should disqualify himself in a proceeding in which his impartiality *might reasonably be* questioned, that Judge Jones should be recused. Thus, the order of recusal rests on application of Canon 3(C)(1) itself despite the fact that Judge Jones' situation did not fit neatly into any of the illustrative instances enumerated under subsections (a) through (d) of Canon 3(C)(1). Stated alternatively, Judge Christian's ruling seems to be functionally equivalent to the standard, but not the examples, embodied by Canon 3(C)(1).[4] The question remains, then, whether

---

attorney had notice of the facts upon which the recusal motion was based because that information had become stale would seem to warrant the traditional standard as opposed to the higher standard used to prevent a party who was dissatisfied with the result of the trial from obtaining a "second bite at the apple."

4. Some confusion is presented by the order, however, due to Judge Christian's repeated findings and conclusions that "no . . . specifically enumerated violation of the Canons of Judicial Conduct" was shown. Separate and apart from the similarity between Judge Christian's findings regarding whether a reasonable person would question Judge Jones' impartiality and the standard of Canon 3(C)(1), there is an additional

the findings of fact support a violation of Canon 3(C)(1) and whether those findings are supported by the record evidence.

B. Findings of Fact and Supporting Record Evidence

Judge Christian's conclusion that a reasonable person would question Judge Jones' impartiality was based on the following findings of fact: (1) Judge Jones and Ms. Holliday co-owned an interest in vacation property together, (2) "more recently, [Judge Jones and Ms. Holliday] had recurrent conversations regarding the sale of their respective interests to the other," (3) during the pendency of the action in which Ms. Holliday represented defendant, these discussions continued and Ms. Holliday "referenced selling her interest in the vacation property" to Judge Jones, and (4) Judge Jones had a fiduciary responsibility to and a continuing financial connection with Ms. Holliday. Defendant does not contest these facts, and I agree with Judge Christian's determination that, on these facts, a reasonable person would question a judge's impartiality. Furthermore, these facts are capable of giving rise to a " 'taint of suspicion' " from which we traditionally shield the judiciary. *Fie*, 320 N.C. at 628, 359 S.E.2d at 775 (quoting *Ponder*, 233 N.C. at 706, 65 S.E.2d at 360). In summary, based on the standard previously set out by our Supreme Court, it appears Judge Christian granted plaintiff's motion to recuse based upon the actual existence of a ground for disqualification, that such ground is supported by findings of fact as they were found to exist, and that such findings are not contested and, therefore, should be taken as true and supported by the evidence. I would hold Judge Christian correctly considered both actual partiality and the appearance thereof in determining the recusal issue.

Faced with the inability to find error in Judge Christian's order under our existing standard for recusal, I write separately for clarification regarding examining and reconciling the record with the standard our Supreme Court instructed this Court to apply. My understanding of that standard does not comport with the approach adopted by the majority in this case. I conclude there was no error in Judge Christian's order.

This conclusion does not imply wrongdoing on the part of Judge Jones. Judicial recusal does not always involve a disservice to the lit-

---

reason to read the scope of such portions of Judge Christian's order narrowly: if Judge Christian were referencing the entirety of the Canons in the Code of Judicial Conduct, it would be superfluous to additionally and specifically address whether there were violations of Canons 2, 3, or 5 as Judge Christian does in various portions of his order.

igants in the case or, here, an abuse concerning Judge Jones' administration of justice. Rather, our zealous guarding of the trust reposed in our judiciary by the public warrants, at times, our erring on the side of caution, and even extreme caution, lest the shadow of suspicion fall over its integrity. *Accord Fie*, 320 N.C. at 628-29, 359 S.E.2d at 776 (holding it was error for one judge not to recuse another judge despite noting that the holding did not "imply that Judge Burroughs was actually prejudiced against the defendants or that he was in fact unable to preside fairly over the trial. The appearance of a preconception of the validity of the charges against these defendants is sufficient to require a new trial").